UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
MICHAEL A. HAYDEN,                                         :
                                        Plaintiff,         :
                                                           :        21 Civ. 10249 (LGS)
                      -against-                            :
                                                           :        __OPINION AND ORDER__
JEFF KOONS,                                                :
                                        Defendant.   :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Michael Hayden brings this action against Defendant Jeff Koons alleging

(i) copyright infringement under the United States Copyright Act, 17 U.S.C. § 101, *et seq.*

("Copyright Act"); (ii) publication and distribution of false copyright management information

under the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a) (the "DMCA") and

(iii) violation of the right of attribution under the Visual Artists Rights Act, 17 U.S.C. § 106A

("VARA").  Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  In the alternative, Defendant seeks a ruling that damages are limited to the

three years preceding the filing of the Complaint under the statute of limitations.  For the reasons

stated below, Defendant's motion to dismiss is denied, and his motion for a ruling limiting

damages is granted.

## I.    BACKGROUND

        The following facts are taken from the Complaint and are assumed to be true only for

purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959

F.3d 509, 512 (2d Cir. 2020).

        During the late 1980s, Plaintiff worked as an artist and set designer for film and theatre in

Italy.  Plaintiff designed sets and props for films and live performances featuring the famous

Italian adult film star and parliamentarian Ilona Staller, also known as Cicciolina.  In approximately 1988, Plaintiff created a large, original sculptural work depicting a giant serpent wrapped around a rock (the "Original Work").  The Original Work was intended to serve as a work of fine art on which Cicciolina could perform sexually explicit scenes, both live and on camera.  Plaintiff inquired whether Diva Futura, the company owned by Cicciolina and her manager, might purchase the Original Work for use as a platform on which Cicciolina would perform.  Diva Futura agreed to acquire the Original Work, which was kept at Cicciolina's manager's studio in Rome.  Below are photos of the Original Work.





Plaintiff retained all copyrights in and to the Original Work, and did not assign authorship, copyright ownership or sublicensing rights to Diva Future or anyone else.  Plaintiff did not intend for anyone other than Cicciolina, her manager and Diva Futura to use the Original Work commercially.

In or about 1989, Defendant traveled to Italy on several occasions to be photographed with Cicciolina in sexually explicit positions using Cicciolina's sets.  The photographs became part of a new series of Defendant's works known as *Made in Heaven*.  Decades later, Defendant stated that his principal motivation behind the series was to further his career and increase his fame by associating himself in a sensational manner with Cicciolina, who was more famous than Defendant at the time the series was created.  The *Made in Heaven* series caused a media sensation and scandal when it premiered, and is regularly credited with launching Defendant into the art world.

3

Three different pieces in the *Made in Heaven* series (the "Infringing Works") reproduced the Original Work in whole or in part.  The Infringing Works include the following: (i) *Made in Heaven* (1989), a lithograph initially commissioned by the Whitney Museum of American Art and displayed as a billboard over downtown Manhattan ("Infringing Work #1"); (ii) *Jeff and Ilona (Made in Heaven)* (1990), a polychromed wood sculpture featuring a three-dimensional replica of the Original Work ("Infringing Work #2") and (iii) *Jeff in the Position of Adam* (1990), an oil on canvas ("Infringing Work #3").





**Infringing Work #1**





**Infringing Work #2**



**Infringing Work #3**

The Infringing Works were featured in museum and gallery exhibits around the world and were sold to collectors. Defendant never requested Plaintiff's permission to use the Original Work and neither credited Plaintiff for the use of the Original Work in the Infringing Works nor paid Plaintiff a license fee for use of the Original Work. The Infringing Works are displayed on Defendant's website and identify Defendant as the author and copyright owner of the entirety of the Infringing Works, without attributing any portion of copyright ownership to Plaintiff. Defendant earned substantial sums of money from the display and sale of the Infringing Works.

Plaintiff discovered the infringement in April 2019, when he came across an Italian news article that displayed an image of Infringing Work #1. In early 2020, Plaintiff obtained copyright registration of the Original Work. Plaintiff filed the Complaint on December 2, 2021. This motion followed.

## II.   STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Olson*, 29 F.4th at 71.  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "[A] complaint must contain sufficient factual matter, accepted as true . . . that raise[s] a right to relief above the speculative level." *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (internal quotation marks and citations omitted and alteration in original).

On a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (internal quotation marks omitted).  Here, there is no dispute that the Original Work and Infringing Works, which were attached to the Complaint, are incorporated by reference.

## III.   DISCUSSION

For the reasons discussed below, Defendant's motion to dismiss is denied because the Complaint sufficiently alleges a valid claim of copyright and Defendant's fair use defense cannot be adjudicated on the face of the Complaint.  Defendant's motion for a ruling limiting damages is granted.

### A.   Validity of the Copyright Registration

The Complaint plausibly alleges the validity of Plaintiff's copyright registration. Registration with the U.S. Copyright Office "constitute[s] prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c).  "However, a certificate of registration creates no irrebuttable presumption of copyright validity, and where other evidence in the record casts doubt on the question, validity will not be assumed." *Urbont v. Sony Music Ent.*, 831 F.3d 80, 89

(2d Cir. 2016) (internal quotation marks omitted).  "[T]he party challenging the validity of the copyright registration has the burden to prove the contrary." *Id.* (internal quotation marks omitted).  "The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017) (quoting 17 U.S.C. § 102(a)).  "'Works of authorship' include 'pictorial, graphic, and sculptural works . . . .'" *Id.* (quoting 17 U.S.C. § 102(a)(5)).  "The Copyright Act also establishes a special rule for copyrighting a . . . sculptural work incorporated into a 'useful article,' which is defined as 'an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.'" *Id.* (quoting 17 U.S.C. § 101).  "The statute does not protect useful articles as such.  Rather, 'the design of a useful article' is 'considered a pictorial, graphical, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" *Id.* (quoting 17 U.S.C. § 101).

As an initial matter, the Original Work is properly analyzed as a "sculptural work" rather than a "useful article."  Section 101 provides that sculptural works "include . . . three-dimensional works of fine, graphic, and applied art . . . [and] works of artistic craftmanship insofar as their form but not their mechanical or utilitarian aspects are concerned[.]"  17 U.S.C. § 101.  In contrast, a "useful article is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.*  Though not binding on the court, the U.S. Copyright Office's guidance on what constitutes a useful article is instructive.  The Compendium of U.S. Copyright Office Practices provides that "a useful article must have 'an intrinsic utilitarian function'" that "is an indispensable characteristic of the article

itself."  Compendium of U.S. Copyright Office Practices, Third Edition § 924.1.  "This useful function is objectively observable or perceivable from the appearance of the item and is an inherent part of its very nature," but "[n]ot all items that may be described as 'useful' are 'useful articles' under the Copyright Act."  *Id.*

Here, the Original Work is a large, original sculpture depicting a giant serpent wrapped around a rock.  Taken as a whole, the Original Work is a sculptural work of artistic craftsmanship, lacking any readily ascertainable intrinsic utilitarian function.  The fact that the Original Work -- by virtue of a relatively flat surface in its center -- may be used in a functional manner as a platform is not dispositive.  *Id.* ("[A] sculpture does not become a useful article simply because it could potentially be used as a doorstop or a coat rack.").  Defendant relies heavily on the fact that Plaintiff intended Cicciolina to use the Original Work as a platform, but the author's subjective or stated purpose is not controlling.  *See* 37 C.F.R. § 202.10(a) ("The registrability of such a work is not affected by the intention of the author as to the use of the work . . . .").

Even if the Original Work were considered a useful article under the theory that the flat portion of the Original Work has an intrinsic utilitarian function, it is copyrightable under a separability analysis.  The Copyright Act "requires separability analysis for any pictorial, graphic, or sculptural features incorporated into the design of a *useful* article."  *Star Athletica, L.L.C.*, 137 S. Ct. at 1009 (internal quotation marks omitted and emphasis added).  Under Section 101, a "'sculptural featur[e]' incorporated into the 'design of a useful article' is eligible for copyright protection if it (1) 'can be identified separately from,' and (2) 'is capable of existing independently of, the utilitarian aspects of the article.'"  *Id.* at 1010 (quoting § 101).  "The first requirement—separate identification—is not onerous.  The decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears

to have pictorial, graphic, or sculptural qualities." *Id.* The second requirement "is ordinarily more difficult to satisfy," and requires the court to "determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article . . . [i]n other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful article." *Id.*

Here, the sculptural serpentine features are clearly discernible and can be identified separately from the rock base of the Original Work. Given the intricate design, detail and craftmanship, the serpentine portion of the Original Work could exist as its own sculptural work separate from the rock boulder or platform upon which it sits. Plaintiff's subjective or stated intent that the Original Work would be used as a platform for Cicciolina's performances is not relevant to the separability analysis, as this "inquiry is limited to how the article and feature are perceived, not how or why they were designed." *Id.* at 1015. Defendant's focus on the physical intertwinement of the serpent and the rock discounts the fact that physical separability is not required for a finding of separability. *Id.* at 1014 (rejecting the distinction between physical and conceptual separability and concluding that "[t]he statutory text indicates that separability is a conceptual undertaking.").

The Complaint sufficiently pleads a claim under the Copyright Act that the entire work, including any potential separable element, infringes, and the court need not reach the issue of how the registration might be affected by any contrary finding. Because the Complaint is sufficient on the issue of copyright validity, Defendant's related arguments regarding the DMCA and VARA claims are not addressed.

B.      **Fair Use**

Defendant's fair use defense cannot be resolved at the motion to dismiss stage.  Because fair use is an affirmative defense, the defendant bears the ultimate burden of proving that the factors balance in its favor.  *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 49 (2d Cir. 2021).  As an affirmative defense, fair use is susceptible to the general rule that "a plaintiff ordinarily need neither anticipate, nor plead facts to avoid, a defendant's affirmative defenses at the pleadings stage."  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).  A Complaint may be dismissed on a Rule 12(b)(6) motion only if the affirmative defense "appears on the face of the complaint."  *Id.* at 319 (internal quotation marks omitted).  Because the fair use inquiry entails a fact-driven, "context-sensitive" analysis, *Cariou v. Prince*, 714 F.3d 694, 704-05 (2d Cir. 2013), it is generally addressed at summary judgment.  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016).  Although the Second Circuit "has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim," *id.*, courts generally have done so when "discovery would not provide any additional relevant information" and "[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue."  *Arrow Prods., Ltd. v. Weinstein Co.*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014); *accord Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 198-99 (S.D.N.Y. 2021) (collecting cases).

The fair use doctrine permits the unauthorized use of a copyrighted work in some circumstances consistent with "[t]he ultimate goal of copyright . . . to expand public knowledge and understanding, which copyright seeks to achieve by giving potential creators exclusive control over copying of their works, thus giving them a financial incentive" to create them. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 212 (2d Cir. 2015).  The fair use doctrine is now

codified in the Copyright Act, which provides a non-exhaustive list of four factors courts are to consider when evaluating whether the use of a copyrighted work is fair: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  The fair use inquiry is "a holistic, context-sensitive inquiry 'not to be simplified with bright line rules[.] . . . All [four statutory factors] are to be explored, and the results weighed together, in light of the purposes of copyright.'"  *Warhol*, 11 F.4th at 37 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994)).

For the reasons discussed below, at least two of these factors cannot be fully evaluated at the motion to dismiss stage.

### 1.  Nature of the Copyrighted Work

The nature of the copyrighted work is a fair use factor for which discovery could provide additional relevant information regarding the extent to which the Original Work is published. This factor directs the courts to consider the nature of the Original Work, "including (1) whether it is expressive or creative . . . or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower."  *Warhol*, 11 F.4th at 45 (internal quotation marks omitted).

As discussed in Section III.A, the Original Work is properly categorized as an artistic piece, rather than a utilitarian object.  That the Original Work is creative cuts strongly against a finding of fair use.  *See Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183, 1197 (2021)

(noting that copyright protection may be stronger where the material "serves an artistic rather than a utilitarian function").

This fair use factor -- the nature of the work -- also considers whether the work is published or unpublished.  "Publication of an author's expression before he has authorized its dissemination seriously infringes the author's right to decide when and whether it will be made public, a factor not present in fair use of published works." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 551 (1985).  Plaintiff contends that the Original Work is unpublished (which cuts against a finding of fair use) because copies were neither distributed nor authorized, as prescribed by the statutory definition of publication, and because "[a] public performance or display of a work does not of itself constitute publication."  17 U.S.C. § 101. However, the statutory definition is not determinative.  *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 87 (2d Cir. 2014) (finding that this factor favored fair use even though the work was technically unpublished under the statutory definition).  While the Complaint acknowledges that Plaintiff agreed that the Original Work could be used commercially by Cicciolina and was intended to be used in public performances, the Complaint also alleges that Plaintiff never "authorized the making or distribution of copies" nor assigned authorship, copyright ownership, or sublicensing rights to Diva Futura of the Original Work. Notwithstanding the sale to Diva Futura, the Complaint alleges that Plaintiff may have retained his right to control the public display of the Original Work under Italian law.  Consideration of the "nature of the copyrighted work" requires consideration of the extent of the copyright, *i.e.*, "the 'thickness' or 'thinness' of [the Plaintiff's] exclusive rights."  *Id.*  Because it is unclear the extent to which Plaintiff may have retained creative control over first publication, a full

assessment of the "nature of the copyrighted work" cannot be made based on the face of the Complaint.

### 2. Market Effects

The final fair use factor "focuses upon the 'effect' of the copying in the 'market for or value of the copyrighted work.'" *Google*, 141 S. Ct. at 1206 (quoting 17 U.S.C. § 107(4)). "Analysis of this factor requires us to balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *Warhol*, 11 F.4th at 48. This assessment cannot be made based solely on the Complaint. *See, e.g.*, *Nicklen*, 551 F. Supp. 3d at 199 (denying motion to dismiss because discovery was required to determine, among other things, "whether the use affected the licensing market for the work"). For instance, it is unclear whether the market for the Original Work and the Infringing Works "meaningfully overlap." *Warhol*, 11 F.4th at 50 (noting that uncontroverted expert testimony established that "photographers generally license others to create stylized derivatives of their work"). The Complaint alleges that Plaintiff created and sold multiple, creative works for Cicciolina's adult performances and freelanced creative projects and art installations for other clients. Defendant argues that Plaintiff has not identified any potential derivative markets, but the cases he relies on dismissed plaintiffs' claims at summary judgment, only after discovery had taken place. *See Authors Guild v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 n.6 (2d Cir. 1998). The Complaint sufficiently alleges a market for Plaintiff's work and is not required to plead more with the aim of negating the fair use defense. *See McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 609 (S.D.N.Y. 2020) (noting that "it is irrelevant whether Plaintiff has pleaded market usurpation" because "the burden of proving fair use is Defendant's . . . .").

14

C.     **VARA Claim**

VARA protects works that were created prior to the statute's effective date so long as title has not passed as of the effective date.  *See* 17 U.S.C. § 106A(d)(2).  There is no dispute that the Original Work was created prior to VARA's effective date, but the parties disagree about the meaning of "title" under the statute.  Because the scope of discovery will not be affected by the dismissal of the VARA claim, the Court reserves decision on this issue pending additional briefing at summary judgment, including on the topics discussed below.

Neither party cites controlling case law explaining how "title" is interpreted for purposes of VARA's retroactive application, nor do they address the extent to which the transfer and scope of title may be governed by state or foreign law in this action.  Defendant relies on *Guzman v. N.M. State Dep't of Cultural Affairs,* 534 F. Supp. 3d 1375, 1382 (D.N.M. 2021), for the proposition that title transfers upon sale, but in that case, the court took into account the language of the parties' contract, which made clear that all ownership rights had been transferred.  In doing so, the court also concluded that the plaintiff's retention of the right to maintain the work did not mean that he kept title to the work.  *Id.*  The court's analysis suggests that more is required than simply looking to whether a sale or transfer occurred.  Plaintiff relies on a previous version of the statute, which used the term "copyright" instead of "title."  H.R. Rep. 101-514, *as reprinted in* 1990 U.S.C.C.A.N. 6915, 6928 (1990).  Ultimately, the Senate's proposed amendment, which substituted "title" for "copyright," was approved and incorporated into the final version of the statute.  Plaintiff offers no explanation for why such a change, which appears to have been connected to concerns about the taking clause, should not be regarded as legislative intent in Defendant's favor.  *See* 136 Cong. Rec. H13314 (1990), at 36948 (Rep. Kastenmeier noting that the "amendment in fact avoids taking clause arguments, and in this respect is salutary.").

15

**D.      Limitation on Damages**

Defendant's motion for a ruling limiting damages to the three-year period prior to the commencement of this action is granted.  The Copyright Act limits a plaintiff's recovery to damages incurred during the three years prior to filing suit.  *Sohm v. Scholastic Inc.*, 959 F.3d 39, 52 (2d Cir. 2020); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014) ("[A] successful plaintiff can gain retrospective relief only three years back from the time of suit."). Plaintiff contends that a number of courts outside the Second Circuit have rejected *Sohm*'s holding, but this Court is bound to follow Second Circuit precedent.

**IV.      CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is DENIED and Defendant's motion limiting damages to the three-year period prior to the commencement of this action is GRANTED.  The Clerk of Court is respectfully directed to close the motion at Docket No. 23.

Dated: July 18, 2022
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**