Jordan Fletcher
FLETCHER LAW PLLC
246 Broadway, 3rd Floor
New York, NY 10001
Tel: (212) 320-8945
Fax: (347) 983-0046
jordan@fletcherlaw.co

Linda Joy Kattwinkel (admitted *pro hac vice*)
OWEN, WICHERSHAM & ERICKSON, P.C.
One Concord Center
2300 Clayton Road, Suite 1400
Concord, CA 94520
Tel: (415) 882-3200
ljk@owe.com

*Attorneys for Plaintiff Michael A. Hayden*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHAEL A. HAYDEN, | : | Case No. 21 Civ. 10249 |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **FIRST AMENDED** |
| | : | **COMPLAINT** |
| JEFF KOONS and JEFF KOONS LLC, | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |
| | : | |

Plaintiff Michael A. Hayden, by his attorneys Fletcher Law PLLC and Owen, Wickersham & Erickson, P.C., for his First Amended Complaint against defendant Jeff Koons and Jeff Koons LLC (together "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive, monetary, and declaratory relief arising out of the Defendants' blatant, unlawful, and worldwide infringement of plaintiff Michael A. Hayden's original sculptural artwork.

1

2. Plaintiff Mr. Hayden is an American citizen who currently resides in California and Granada, Nicaragua.

3. Defendant Jeff Koons is a contemporary American "appropriation artist" who is notorious for incorporating the creative work of other artists into artworks of which Mr. Koons claims sole authorship. Because of his work as an appropriation artist, Mr. Koons has been sued repeatedly for copyright infringement in the United States and abroad and has been found liable for infringement multiple times.

4. During the late 1980s, Mr. Hayden lived in Italy and worked as an artist and set designer for film and theatre. On several occasions, Mr. Hayden designed sets and props for films and live performances featuring the famous Italian adult film star and parliamentarian Ilona Staller – widely known as "Cicciolina."

5. In approximately 1988, Mr. Hayden – who knew that Cicciolina was fond of snakes – created a large, original sculptural work depicting a giant serpent wrapped around a rock pedestal (the "Hayden Work"). Mr. Hayden then approached Cicciolina's manager and director, Riccardo Schicchi, to inquire whether Schicchi and Cicciolina's company, Diva Futura, might purchase the Hayden Work for use as a platform on which Cicciolina would perform. Ultimately, Diva Futura did agree to acquire the Hayden Work from Mr. Hayden, and the Hayden Work was kept at Schicchi's studio in Rome. Images of the Hayden Work are attached hereto as **Exhibit A**.

6. Separately, in or about 1989, Mr. Koons traveled to Italy multiple times to be photographed with Cicciolina in sexually explicit positions, in preparation for an upcoming exhibition and a new series of Koons works, which would come to be called *Made in Heaven*. The photo sessions occurred on Cicciolina's own sets at Schicchi's studio.

7. Decades later, Mr. Koons would state that his principal motivation behind the *Made*

*in Heaven* series was to further his own career and increase his own fame by associating himself in a sensational manner with Cicciolina, a celebrity who, at the time the series was created, possessed far greater notoriety and renown than Mr. Koons, himself.

8. As the Whitney Museum of American Art's ("Whitney Museum") 2014 exhibition catalogue *Jeff Koons: A Retrospective* ("Whitney Catalogue") would later describe the *Made in Heaven* series' titular work:

> Set against a tempestuous backdrop **atop a glistening boulder**, a naked Koons clutches his costar's [*i.e.*, Cicciolina's] lingerie-clad body while staring at the camera and, he seems to imagine, his legions of adoring fans.

(emphasis added.)

9. In fact, the "glistening boulder" described by the Whitney Catalogue was actually Mr. Hayden's serpent-and-rock sculpture, the Hayden Work.

10. The *Made in Heaven* series caused a media sensation and scandal when it premiered, and it is regularly credited with launching Mr. Koons into the art world's stratosphere.

11. And yet, for at least three different pieces in the *Made in Heaven* series (altogether, the "Infringing Works"), Mr. Koons reproduced the Hayden Work exactly, in whole or in part. These are:

    a. *Made in Heaven* (1989), a lithograph initially commissioned by the Whitney Museum and first displayed publicly as a giant billboard towering over downtown Manhattan;

    b. *Jeff and Ilona (Made in Heaven)* (1990), a polychromed wood sculpture featuring an exact, life-sized, 3-D replica of the Hayden Work. Upon information and belief, this work premiered at the Venice Biennale in 1990; and

    c. *Jeff in the Position of Adam* (1990), an oil on canvas.

3

Images of the Infringing Works are attached hereto as **Exhibit B**.

12. The Infringing Works would go on to be featured in museum and gallery exhibitions around the world, and they would be sold to collectors many times over. Upon information and belief, Mr. Koons earned substantial sums of money, directly and indirectly, from the display and sale of the Infringing Works.

13. Mr. Hayden stopped working and associating with Mr. Schicchi and Cicciolina shortly after selling the Hayden Work to Diva Futura, and he continued his life happily unaware of Mr. Koons's actions or the particulars of Mr. Koons's oeuvre. It was only in April 2019 that Mr. Hayden discovered for the first time the massive infringement of his own intellectual property rights that had occurred decades earlier, when he chanced across an Italian news article discussing a lawsuit filed by Cicciolina against Sotheby's auction house and displaying an image of *Made in Heaven* (1989).

14. In early 2020, Mr. Hayden obtained copyright registration of the Hayden Work, effective as of August 7, 2019.

15. In March 2020, counsel for Mr. Hayden notified counsel for Mr. Koons of Mr. Koons's illegal conduct, including copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA") and the Visual Artists Rights Act ("VARA").

16. Despite this notice of past infringement, Mr. Koons willfully continued to engage in his illegal and infringing activities, including by continuing to display images, false copyright management information, and false authorship information concerning the Infringing Works on the website www.jeffkoons.com, which is owned by defendant Jeff Koons LLC and controlled by Mr. Koons.

17. Mr. Hayden asserts claims here against both Defendants for (i) copyright

infringement under the United States Copyright Act, 17 U.S.C. § 101, *et seq.* ("Copyright Act"), and (ii) publication and distribution of false copyright management information under 17 U.S.C. § 1202(a) (*i.e.*, the DMCA); and against Mr. Koons only for (iii) violation of his right of attribution under 17 U.S.C. § 106A (*i.e.*, VARA). He seeks damages, including but not limited to statutory damages, declaratory and injunctive relief, and recovery of his costs and attorney's fees.

18. Additionally, as part of this requested relief, Mr. Hayden seeks a court order directing the Defendants to (a) publicly credit Mr. Hayden, in all references to the *Made in Heaven* series and the Infringing Works, as the proper author of those portions of the Infringing Works that replicate the Hayden Work; and (b) contact all current owners of, all those currently in possession of, and all those who in the future intend to display editions of the Infringing Works and to inform them (i) that the Infringing Works infringe Mr. Hayden's copyright in the Hayden Work therefore may not be lawfully sold, transferred, or publicly displayed for commercial purposes; and (ii) that Mr. Hayden must be publicly credited in all public displays of the Infringing Works as the proper author of those portions of the Infringing Works that replicate the Hayden Work.

## JURISDICTION AND VENUE

19. This is an action for copyright infringement and related claims under the Copyright Act, VARA, and the DMCA. The Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 501 and 1203 and 28 U.S.C. §§ 1331 and 1338.

20. The Court has personal jurisdiction over defendant Jeff Koons because Mr. Koons resides and is domiciled in New York and does continuous and systematic business in New York and in this District. Mr. Koons has also transacted business in New York and has contracted to supply goods or services in New York in connection with the matters giving rise to this lawsuit.

He also has committed acts inside and outside of New York that caused injury to plaintiff within New York; regularly does or solicits business in New York; derives substantial revenue from goods used or services rendered in New York; expected or reasonably should have expected his infringing conduct to have consequences in New York; and derives substantial revenue from interstate commerce.

21. The Court has personal jurisdiction over defendant Jeff Koons LLC because it is registered to conduct business in New York as a foreign limited liability company, because its principal business address is in New York, because it does continuous and systematic business in New York, and because it has transacted business in New York in connection with matters giving rise to this lawsuit.

22. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400, because both Defendants do business, may be found, and are subject to personal jurisdiction here. Further, a substantial part of the events giving rise to the claims at issue in this action occurred in this District.

**PARTIES**

23. Plaintiff Michael Hayden is an individual who resides in California and Granada, Nicaragua. Mr. Hayden owns all relevant rights in and to the original Hayden Work and has satisfied the requirements of 17 U.S.C. § 411.

24. Defendant Jeff Koons is an individual who resides, maintains his principal place of business, and conducts significant business in New York, New York.

25. Defendant Jeff Koons LLC is a Delaware entity registered as a foreign limited liability company with the New York Secretary of State. It is headquartered in New York, New

York and conducts significant business in this state. Defendant Mr. Koons is the majority owner and managing partner of defendant Jeff Koons LLC.

## FACTUAL BACKGROUND

### A.  Creation of the Hayden Work

26.  During the late 1980s, plaintiff Mr. Hayden lived in Italy and worked as an artist and set designer for film and theatre. On several occasions, Mr. Hayden designed sets and props for films and live performances featuring the famous Italian adult film star and parliamentarian Ilona Staller – widely known as "Cicciolina."

27.  In approximately 1988, Mr. Hayden – who knew that Cicciolina was fond of snakes – created the Hayden Work, a large, original sculptural work depicting a giant serpent wrapped around a rock pedestal. Images of the Hayden Work are attached hereto as **Exhibit A**.

28.  Mr. Hayden then approached Cicciolina's manager and director, Riccardo Schicchi, to inquire whether Schicchi and Cicciolina's company, Diva Futura, might purchase the Hayden Work for use as a platform on which Cicciolina would perform. Ultimately, Diva Futura did agree to acquire the Hayden Work from Mr. Hayden, and the Hayden Work was kept at Schicchi's studio in Rome.

29.  Mr. Hayden retained all copyrights in and to the Hayden Work. The Hayden Work was not created as a work made for hire, nor did Mr. Hayden assign authorship, copyright ownership, or sublicensing rights to Mr. Schicchi, Diva Futura, or anyone else.

30.  The intended purpose of the Hayden Work was to serve as a work of fine art on which Cicciolina could perform sexually explicit scenes, both live and on camera. Mr. Hayden did not intend that the Hayden Work – or images of the Hayden Work – would be used commercially by anyone other than Cicciolina, Diva Futura, and Mr. Schicchi; nor did Mr. Hayden sign any

7

documents authorizing Cicciolina, Diva Futura, or Mr. Schicchi to transfer their use rights to others.

31. Mr. Hayden has registered the copyright in the Hayden Work with the United States Copyright Office. A copy of the Certificate of Registration is attached hereto as **Exhibit C**.

**B.    Mr. Koons and the Creation of the Infringing Works**

32. Mr. Koons is one of the most controversial living contemporary artists in the world.

33. Mr. Koons is known widely as an "appropriation artist." As described by United States District Judge Louis L. Stanton in his 2007 opinion in *Blanch v. Koons*, a lawsuit for copyright infringement against Mr. Koons, "[a]ppropriation artists take other artists' work and use it in their own art, appropriating and incorporating it in their own product with or without changes. Because of this appropriation, often . . . done without giving credit to the original artist, the appropriation artists can expect that their work may attract lawsuits."

34. Indeed, because of his work as an appropriation artist, Mr. Koons has been sued for copyright infringement repeatedly in the United States and abroad and has been found liable for infringement multiple times.

35. In or about 1989, Mr. Koons traveled to Italy multiple times to be photographed with Cicciolina in sexually explicit positions, in preparation for two upcoming Koons exhibitions and a new series of works, which would be called *Made in Heaven*. The photo sessions occurred on Cicciolina's own sets at Mr. Schicchi's studio.

36. For at least three different pieces in the *Made in Heaven* series (*i.e.*, the "Infringing Works"), Mr. Koons reproduced the Hayden Work exactly, in whole or in substantial part. These

are:

    a.    *Made in Heaven* (1989), a lithograph initially commissioned by the Whitney Museum and first displayed publicly as a giant billboard towering over downtown Manhattan featuring an image of Koons and Cicciolina atop the Hayden Work. Produced as an edition of 3 plus an artist's proof;

    b.    *Jeff and Ilona (Made in Heaven)* (1990), a polychromed wood sculpture featuring an exact, life-sized, 3-D replica of the Hayden Work. Upon information and belief, this work premiered at the Venice Biennale in 1990. Produced as an edition of 3 plus an artist's proof; and

    c.    *Jeff in the Position of Adam* (1990), an oil on canvas, featuring an image of Koons and Ciccionlina atop the Hayden Work. Produced as an edition of 1 plus an artist's proof.

Images of the Infringing Works are attached hereto as **Exhibit B**.

37.    The *Made in Heaven* series caused a media sensation and scandal when it premiered, and it is regularly credited with launching Mr. Koons into the art world's stratosphere.

38.    Decades later, Mr. Koons would state that his principal motivation behind the *Made in Heaven* series was to further his own career and increase his own fame by associating himself in a sensational manner with Cicciolina, a celebrity who, at that time, possessed far greater notoriety and renown than Mr. Koons, himself. In particular:

    a.    In a live interview given on or about December 2, 2017 at the New Museum in New York City, Mr. Koons would state about the origins of *Made in Heaven*:

> "I had just finished my *Banality* exhibition, and at that point I kind of felt like I had become an art star . . . . But I didn't really feel like I was having

9

any place in kind of the larger culture and not being viewed as . . . relevant in American culture, you really have to be in the film or entertainment industry to be viewed as culturally relevant. So I thought I'll just hire this woman . . . I'll just kind of montage myself into her images . . . and I thought I'll just put my own body in there and it'll be like we made a film, and I thought I'll call it *Made in Heaven* starring Jeff Koons and Cicciolina. I thought this way I would have another star on my shoulder . . . move past an art star, I'd be a film star. And that was the concept of that work."[1]

    b.    Similarly, in an audio interview published on the website of the Whitney Museum, Mr. Koons stated,

"I thought, 'You know what I'll do? I'll create this billboard that's advertising a film. I'll call it *Made in Heaven*, and it'll be starring myself, Jeff Koons, and Cicciolina. It'll be like I became another star. . . . I hired Ilona [*i.e.*, Cicciolina] and I went to Rome, I treated everything as a readymade. Used the same photographer she always worked with, used the same sets she always worked with, had her wear the same type of dresses, same type of makeup, and I did a photo shoot with her to create the billboard [*i.e.*, the Infringing Work *Made in Heaven* (1989)]."[2]

    39.    Similarly, the Whitney Museum's website describes Mr. Koons's motivation for producing the *Made in Heaven* billboard as "a particularly brazen . . . form of self-promotion

---

[1] *Jeff Koons talks about 'Made in Heaven' presented by According2g.com*. [Video]. YouTube. Uploaded by According2g.com Presents…, Dec. 2, 2017, https://www.youtube.com/watch?v=SI72ZTD96_E (0:37-2:45).

[2] *See* https://whitney.org/media/1058 [Audio and Transcript].

[which] launched one of Koons's most important bodies of work." It notes that, prior to *Made in Heaven*, "Koons had become one of the most famous young artists in the world, but he still felt art had a limited reach compared to the entertainment industry and imagined that making a film, titled *Made in Heaven*, would further increase his renown."[3]

40. The Infringing Works would go on to be featured in museum and gallery exhibitions around the world, and they would be sold to collectors many times over. Upon information and belief, Mr. Koons earned substantial sums of money, directly and indirectly, from the display and sale of the Infringing Works.

41. Despite the fact that Mr. Koons reproduced near-identical copies of the Hayden Work in the Infringing Works, at no time did Mr. Koons (or anyone on Mr. Koons's behalf) contact Mr. Hayden to request permission to use the Hayden Work, credit Mr. Hayden for the use of the Hayden Work in the Infringing Works, or pay Mr. Hayden a license fee for Mr. Koons's use of the Hayden Work.

42. Mr. Hayden never granted Mr. Koons permission to use the Hayden Work in the Infringing Works, nor did any license Mr. Hayden may have implicitly granted to Cicciolina, Diva Futura, or Mr. Schicchi[4] permit Mr. Koons to use, copy, make, or profit from copies of the Hayden Work.

43. At the time that he produced the Infringing Works, Mr. Koons had significant experience in the business world and as an appropriation artist. Mr. Koons therefore knew, or should have known, that he was required to obtain an artist's permission before he could lawfully

---

[3] *See* https://whitney.org/exhibitions/jeff-koons?section=7&subsection=1#exhibition-artworks.

[4] To the extent that Italian Law applies to this transaction, it is possible that *no* rights to use, display, copy, or exploit the Hayden Work could have been transferred, explicitly or implicitly, to *anyone* absent a written instrument providing for such transfer, regardless of intent.

11

copy a work by that artist. Consequently, Mr. Koons knew, or should have known, that he was required to obtain Mr. Hayden's permission before reproducing the Hayden Work in the Infringing Works.

44. The Infringing Works have also been displayed, on information and belief, for many years on Mr. Koons's website, www.jeffkoons.com. As of the filing of this lawsuit, the Infringing Work are still being displayed on Mr. Koons's website.

45. The publications and distributions of the Infringing Works displayed on Mr. Koons's website contain copyright management information ("CMI") that is false.

46. Specifically, Mr. Koons is identified as the author and copyright owner of the entirety of each of the Infringing Works on the website www.jeffkoons.com. The website does not identify Mr. Hayden as the author or copyright owner of those portions of the Infringing Works that are duplicative of the Hayden Work. *See* **Exhibit B**.

47. Upon information and belief, since the creation of the Infringing Works, Mr. Koons has always displayed and caused to be displayed this false CMI in connection with all displays, sales, and distributions of the Infringing Works. Mr. Koons engaged in these publications of false CMI in order to make it appear as if he were the true and sole author of the works embodied in the Infringing Works, and with the intent to induce, enable, facilitate, and conceal his infringement of the Hayden Work.

48. Furthermore, the Hayden Work is a work of visual art as defined in 17 U.S.C. § 101. Since the creation of the Infringing Works and up to the present day, Mr. Koons has falsely claimed authorship of the Infringing Works, including those portions of the Infringing Works that are duplicative of the Hayden Work. These false claims of authorship are in violation of 17 U.S.C. § 106A(a) and (b).

C. **Defendants Continued to Infringe After Being Contacted by Mr. Hayden's Counsel**

49. Mr. Hayden stopped working and associating with Mr. Schicchi and Cicciolina shortly after selling the Hayden Work to Diva Futura. Although he continued to live or spend time in Italy for a number of years, Mr. Hayden focused on his own art and on other creative opportunities in unrelated industries.

50. Notwithstanding Mr. Koons's success with the *Made in Heaven* series, therefore, Mr. Hayden spent the next three decades happily unaware of Mr. Koons's actions or the particulars of Mr. Koons's oeuvre.

51. It was only in April 2019 that Mr. Hayden discovered for the first time the massive infringement of his own intellectual property rights that had occurred decades earlier, when he happened across an Italian news article discussing a lawsuit filed by Cicciolina against Sotheby's auction house and displaying an image of the Infringing Work *Made in Heaven* (1989).

52. In early 2020, Mr. Hayden obtained copyright registration of the Hayden Work, effective as of August 7, 2019.

53. In March 2020, counsel for Mr. Hayden notified Mr. Koons of Mr. Koons's illegal conduct, including copyright infringement and violations of the DMCA and VARA.

54. Nevertheless, Mr. Koons has continued his willful copyright violations unabated, including by continuing to display images, false copyright management information, and false authorship information concerning the Infringing Works on the website www.jeffkoons.com, which is owned by defendant Jeff Koons LLC and controlled by Mr. Koons.

D. **Allegations Relating to the Absence of Fair Use**

55. The Infringing Works are not "fair uses" of the Hayden Work.

56. First: The Infringing Works do not alter the Hayden Work with new expression,

meaning, or message to an extent sufficient to characterize any of the Infringing Works as transformative. The Infringing Works do not qualify as a criticism, comment, news reporting, teaching, scholarship, or research. The composition, presentation, scale, color palette and media used in the Hayden Work and Infringing Works are remarkably similar, and with little to no distortion. The Hayden Work is a major, if not dominant, component of the impression created by the Infringing Works.

57.     The use, character, and meaning of the Hayden Work within the Infringing Works does not deviate in any way from the intended original use, character, or meaning of the Hayden Work. Indeed, whereas the intended purpose of the Hayden Work was, *inter alia*, to serve as a platform, backdrop, and context for Cicciolina's sexually explicit performances, Mr. Koons has admitted repeatedly that his purpose and intention for the Infringing Works was simply to *insert himself* into Cicciolina's sexually explicit performances and thereby increase his own notoriety. The Infringing Works do not place the Hayden Work in a new context, nor did they add any new expression, meaning, or message to the Hayden Work. No reasonable observer would conclude in a side-by-side comparison that the Infringing Works created new information, aesthetics, insights, or understandings with respect to the Hayden Work.

58.     The Infringing Works are purely commercial works whose explicit purpose was to increase Mr. Koons's fame and notoriety. They have been featured in museum and gallery exhibitions around the world and, upon information and belief, sold to collectors many times over. Upon information and belief, Mr. Koons has earned substantial sums of money, directly and indirectly, from the display and sale of the Infringing Works.

59.     Second: The Hayden Work is an expressive and creative unpublished work; although the physical sculpture was sold to Diva Futura, Mr. Hayden has no information indicating

that images or copies of the Hayden Work were ever distributed to the public, apart from via their inclusion by Mr. Koons in the Infringing Works. In any event, Mr. Hayden never authorized the making or distribution of copies of the Hayden Work.

60.     Third: The Hayden Work, or an infringing reproduction thereof, comprises between approximately twenty-five percent and sixty-five percent of the entire space or volume of each of the Infringing Works. In at least one of the Infringing Works, *i.e.*, "Jeff and Ilona (Made in Heaven)" (1990), Mr. Koons reproduced the Hayden Work in its entirety and approximately life-size. This quantity of appropriation was not reasonable in relation to Mr. Koons's stated purpose; in fact, to the extent that Mr. Koons desired to associate himself in a sensational manner with Cicciolina, incorporation of the Hayden Work was entirely unnecessary. This is demonstrated by the many other works in Mr. Koons's *Made in Heaven* series, including works featuring Cicciolina, that did not infringe the Hayden Work.

61.     Fourth, the Infringing Works usurped the market for Mr. Hayden's licensing of the Hayden Work. Mr. Hayden's bundle of copyrights includes the rights, via licensing, to decide who could exploit the Hayden Work (and derivatives of the Hayden Work) and under what terms such exploitation could occur. Unrestricted and widespread conduct of the type Mr. Koons engaged in would result in a substantially adverse impact on the potential licensing market for the Hayden Work.

62.     Mr. Hayden created and sold multiple, creative works to Mr. Schicchi and Diva Futura for Cicciolina's adult performances. He also freelanced creative projects and art installations for other clients. Accordingly, there was an existing and potential market for Mr. Hayden's works and for leveraging his copyrights and licensing rights.

63.     In connection with the transfer of the physical object comprising the original

Hayden Work to Mr. Schicchi and Diva Futura, Mr. Hayden did not grant any rights, implicitly or explicitly, that would permit a third party such as Mr. Koons, merely by virtue of encountering the Hayden Work in Mr. Shicchi's studio, to freely exploit the Hayden Work for his own commercial gain. To allow such third-party conduct would destroy the value and legal significance of the transaction between Mr. Hayden and Diva Futura and of any limited license granted thereby.

64. Finally, there is no public benefit to permitting Mr. Koons's unlicensed exploitation of the Hayden Work for Mr. Koons's own monetary and career gain.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, *et seq.*
### (against both Defendants)

65. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 62 above, and incorporates them herein by this reference.

66. Plaintiff Michael A. Hayden is the legal owner of all right, title, and interest under Copyright Law in and to the Hayden Work. Mr. Hayden has satisfied the requirements of 17 U.S.C. § 411 prior to filing this lawsuit.

67. Defendants Jeff Koons and Jeff Koons LLC copied, reproduced, distributed, adapted, and/or publicly displayed the Hayden Work without the consent, permission, or authority of Mr. Hayden.

68. Defendants' conduct constitutes infringement of Mr. Hayden's copyright and exclusive rights, in violation of 17 U.S.C. §§ 106 and 501.

69. Defendants' acts of infringement were willful, intentional, purposeful, and in reckless disregard of, and with indifference to, the rights of Plaintiff.

70. As a result of Defendants' infringement, Mr. Hayden suffered and will continue to suffer damages in the United States and around the world, in an amount yet to be determined.

71. Defendants have profited unlawfully and unjustly as a result of their infringement of Mr. Hayden's copyrights.

72. Defendants are liable to Mr. Hayden for the actual damages suffered by Mr. Hayden as a result of the infringement, as well as for any of Defendants' profits directly or indirectly attributable to these infringements.

73. Mr. Hayden is entitled to injunctive relief prohibiting further infringement of the Hayden Work by Defendants, pursuant to 17 U.S.C. § 502.

74. Mr. Hayden is entitled to injunctive relief ordering the seizure and forfeiture to Mr. Hayden of all copies of the Infringing Works existing in any form in the possession or under the control of Defendants, pursuant to 17 U.S.C. § 503.

## SECOND CLAIM FOR RELIEF
## FALSE COPYRIGHT MANAGEMENT INFORMATION - 17 U.S.C. § 1202(a)
### (against both Defendants)

75. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 72 above, and incorporates them herein by this reference.

76. Mr. Koons and Jeff Koons LLC knowingly provided and published false copyright management information in connection with the Infringing Works. Specifically, Defendants prominently identified Mr. Koons himself as the author and copyright owner of the entirety of the Infringing Works in promotional materials for the *Made in Heaven* series, and on the website [www.jeffkoons.com,](www.jeffkoons.com) which is owned by Jeff Koons LLC and controlled by Mr. Koons. The website does not identify Mr. Hayden as the author or copyright owner of those portions of the Infringing Works that are duplicative of the Hayden Work.

77. Defendants knowingly provided, published and distributed such false copyright management information in connection with the Infringing Works with the intent to induce, enable,

17

facilitate, or conceal the infringement of Mr. Hayden's rights under the Copyright Act.

78. Mr. Hayden has been injured as a result of Defendants' violation of 17 U.S.C. § 1202(a) and is entitled to injunctive relief, impoundment of the Infringing Works, damages, costs, and attorneys' fees. Mr. Hayden may also and/or in the alternative elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) of up to $25,000 for each violation of 17 U.S.C. § 1202(a).

**THIRD CLAIM FOR RELIEF**
**<u>VISUAL ARTISTS RIGHTS ACT - 17 U.S.C. § 106A</u>**
**(against defendant Jeff Koons)**

79. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 76 above, and incorporates them herein by this reference.

80. The Hayden Work is a work of visual art as defined in 17 U.S.C. § 101.

81. Since the creation of the Infringing Works and up to the present day, Mr. Koons has falsely claimed authorship of the Infringing Works, including those portions of the Infringing Works that are duplicative of the Hayden Work.

82. These false claims of authorship are in violation of 17 U.S.C. § 106A(a) and (b).

83. As a result of Mr. Koons's violations of 17 U.S.C. 106A, Mr. Hayden is entitled to declaratory and injunctive relief; damages, including statutory damages; and costs and attorneys' fees.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Mr. Koons as follows:

1. Finding that Mr. Koons has infringed Mr. Hayden's exclusive rights under copyright in the Hayden Work, in violation of 17 U.S.C. § 106;

2. Finding that Mr. Koons has provided and published false copyright management information in connection with the Infringing Works, in violation of 17 U.S.C. § 1202(a);

3. Finding that Mr. Koons has infringed Mr. Hayden's exclusive rights to claim authorship of the Hayden Work, pursuant to 17 U.S.C. § 106A;

4. Granting Mr. Hayden permanent injunctive relief enjoining Mr. Koons from reproducing, modifying, preparing derivative works from, displaying, or selling, offering to sell, or otherwise distributing the Hayden Work or the Infringing Works, or any other infringing articles, including copies of the foregoing, pursuant to 17 U.S.C. §§ 502 and 1203;

5. Granting Mr. Hayden permanent injunctive relief in the form of an order directing Mr. Koons to (a) publicly credit Mr. Hayden, in all references to the *Made in Heaven* series and the Infringing Works, as the proper author of those portions of the Infringing Works that replicate the Hayden Work; and (b) contact all current owners of, all those currently in possession of, and all those who in the future intend to display editions of the Infringing Works and to inform them (i) that the Infringing Works infringe Mr. Hayden's copyright in the Hayden Work therefore may not be lawfully sold, transferred, or publicly displayed for commercial purposes; and (ii) that Mr. Hayden must be publicly credited in all public displays of the Infringing Works as the proper author of those portions of the Infringing Works that replicate the Hayden Work.

6. Ordering the seizure and forfeiture to Mr. Hayden, or other disposition the Court deems appropriate, of the Infringing Works, and any other infringing articles, including all copies of the foregoing existing in any form, in the possession or under the control of Mr. Koons, pursuant to 17 U.S.C. § 503 and 1203;

7. Granting Mr. Hayden his actual damages and Mr. Koons's infringement-related profits for violation of 17 U.S.C. § 106, pursuant to 17 U.S.C. § 504, in amounts to be proven at

trial;

8. Granting Mr. Hayden statutory damages in the maximum amount allowed by law, or alternatively, at Mr. Hayden's election, his actual damages and Mr. Koons's infringement-related profits for violation of 17 U.S.C. § 106A, pursuant to 17 U.S.C. § 504, in amounts to be proven at trial;

9. Granting Mr. Hayden statutory damages in the maximum amount allowed by law, or alternatively, at Mr. Hayden's election, his actual damages and Mr. Koons's infringement-related profits, pursuant to 17 U.S.C. § 1203, in amounts to be proven at trial;

10. Directing Mr. Koons to reimburse Mr. Hayden's attorneys' fees and costs of this action, pursuant to 17 U.S.C. §§ 505 and 1203; and

11. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: July 28, 2022

**FLETCHER LAW, PLLC**

By: _____
Jordan Fletcher
*Counsel for Plaintiff Michael A. Hayden*

**OWEN, WICHERSHAM & ERICKSON, P.C.**

By: /s/ Linda Joy Kattwinkel
Linda Joy Kattwinkel (admitted *pro hac vice*)
*Counsel for Plaintiff Michael A. Hayden*