UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL A. HAYDEN,

                Plaintiff,

v.

JEFF KOONS AND JEFF KOONS LLC,

                Defendants.

21-CV-10249 (TMR)

**OPINION & ORDER**

Dated: February 25, 2025

Jordan Fletcher, Fletcher Law, PLLC, of New York, N.Y., and Linda Joy Kattwinkel, Owen, Wickersham & Erickson, P.C., of Concord, CA, argued for plaintiff Michael A. Hayden.

Daniel J. Brooks, Scarola Zubatov Schaffzin PLLC, of New York, N.Y., argued for defendants Jeff Koons and Jeff Koons LLC.

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:

      Michael A. Hayden ("plaintiff") brings the instant action against Jeff Koons ("Koons") and Jeff Koons LLC (collectively, "defendants"), alleging: (1) copyright infringement under the United States Copyright Act (the "Copyright Act"), 17 U.S.C. § 101, et seq.; (2) provision, publication and distribution of false copyright management information under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a); and against Koons only for (3) false claims of authorship in violation of the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A. *See* First Am. Compl. ("Am. Compl."), ECF No. 44.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), plaintiff moves for summary judgment as to each of its claims. *See* Notice of Mot. for Summ. J. ("Pl. Notice Mot."), ECF No. 53; Pl.'s Mem. of Law Supp. Mot. for Summ. J. ("Pl. Br."), ECF No. 54; Pl.'s Reply Mem. of Law Further Supp. Mot. for Summ. J. and in Opp'n to Defs.' Cross Mot. for Summ. J. ("Pl. Reply Br."), ECF No. 66.

Defendants oppose plaintiff's motion and cross-move for summary judgment dismissing the First Amended Complaint. *See* Notice of Mot. for Summ. J. Dismissing Compl. ("Defs. Notice Mot."), ECF No. 61; Mem. of Law Opp'n to Pl.'s Mot. for Summ. J. and in Supp. Defs.' Cross-Mot. for Summ. J. Dismissing Compl. ("Defs. Br."), ECF No. 65; Reply Mem. of Law Supp. Defs.' Cross-Mot. for Summ. J. Dismissing Compl. ("Defs. Reply Br."), ECF No. 68.

Plaintiff also filed a letter motion requesting permission to move for reconsideration of the scope of damages available. Letter Mot. Leave to File Mot. Recons. ("Pl. Letter Mot."), ECF No. 77.

For the reasons discussed below, plaintiff's motion for summary judgment is denied. Defendants' cross-motion for summary judgment dismissing the complaint is granted. Plaintiff's letter motion for leave to file a motion for reconsideration is denied.

## BACKGROUND

### I.    Parties in the instant action

Plaintiff is an American artist who resided primarily in Italy from approximately 1980 to 2007.  Pl.'s Rule 56.1 Statement ("Pl. SMF") ¶¶ 5, 8, ECF No. 55; Defs.' Resp. to Pl.'s Rule 56.1 Statement ("Defs. RSMF") ¶¶ 5, 8, ECF No. 64; Decl. of Michael A. Hayden ("Hayden Decl.") ¶¶ 2, 5, ECF No. 56.

Plaintiff worked in Italy as a set and prop designer for live theater companies and as a self-employed visual artist.  Pl. SMF ¶ 8; Defs. RSMF ¶ 8; Hayden Decl. ¶ 5.  In or about the late 1980s, plaintiff created several sculptural projects for Diva Futura, an Italian production company that produced live, photographic, cinematic and related adult-oriented performances.  Pl. SMF ¶¶ 11, 14; Defs. RSMF ¶¶ 11, 14; Hayden Decl. ¶¶ 8-9.

Defendant Koons is known widely as an American "appropriation artist."  Pl. SMF ¶¶ 28, 30; Defs. RSMF ¶¶ 28, 30.  Defendant Jeff Koons LLC is a Delaware entity that Koons owns wholly and manages.  Pl. SMF ¶ 29; Defs. RSMF ¶ 29.

### II.    The Original Work

The following facts are not in dispute.  During the late 1980s, plaintiff lived in Italy and worked as a set and prop designer for live theater companies and as a self-employed visual artist.  Pl. SMF ¶ 8; Defs. RSMF ¶ 8; Hayden Decl. ¶ 5. Plaintiff created several sculptural works for Diva Futura, an Italian production company owned by Ilona Staller and Ricardo Schicchi.  Pl. SMF ¶ 11; Defs. RSMF ¶ 11; Hayden Decl. ¶¶ 8-9.

Staller is a Hungarian-Italian former erotic performer who performed in live erotic shows and films under the stage name "Cicciolina."  Pl. SMF ¶ 12; Defs. RSMF ¶ 12; Hayden Decl. ¶ 8.  Staller engaged in live, photographic, cinematic and related adult-oriented performances through Diva Futura.  Pl. SMF ¶ 14; Defs. RSMF ¶ 14; Hayden Decl. ¶ 8.  Schicchi worked as the manager, director and photographer of much of Staller's erotic work.  Pl. SMF ¶ 13; Defs. RSMF ¶ 13; Hayden Decl. ¶ 8.

Plaintiff's sculptural works were featured in Staller's live erotic shows.  Pl. SMF ¶ 15; Defs. RSMF ¶ 15.  Plaintiff received cash payment from Schicchi for each of these sculptural works.  Pl. SMF ¶ 15; Defs. RSMF ¶ 15; Hayden Decl. ¶ 9.

In 1988, plaintiff created the Original Work, a large, original sculptural work depicting a giant serpent wrapped around a pedestal of boulders.  Pl. SMF ¶ 17; Defs. RSMF ¶ 17; Hayden Decl. ¶ 11.  Plaintiff created the work by himself in the basement of the apartment building in which he resided in Rome.  Pl. SMF ¶ 17; Defs. RSMF ¶ 17; Hayden Decl. ¶ 11.

Plaintiff fabricated the Original Work from Styrofoam, which he molded and shaped using a knife, metal brushes and sandpaper.  Pl. SMF ¶ 18; Defs. RSMF ¶ 18; Hayden Decl. ¶ 12.  Plaintiff then applied glue, gauze, plaster and paints of various colors, including blues, greens, browns and gold and copper highlights.  Pl. SMF ¶ 18; Defs. RSMF ¶ 18; Hayden Decl. ¶ 12.  To the best of plaintiff's recollection, the dimensions of the Original Work are approximately 6.56 feet by 3.28 feet by 1.96 feet.  Pl. SMF ¶ 18; Defs. RSMF ¶ 18; Hayden Decl. ¶ 12.  Plaintiff

approached Schicchi to inquire whether Diva Futura would purchase the Original
Work for use as a platform upon which Staller could perform erotic acts on film and
before live audiences, who would be charged admission.  Pl. SMF ¶ 20; Defs. RSMF
¶ 20; Defs.' Rule 56.1 Statement ("Defs. CSMF") ¶ 13, ECF No. 64; Pl.'s Resp. Defs.'
Rule 56.1 Counter-Statement ("Pl. RCSMF") ¶ 13, ECF No. 67; Hayden Decl. ¶ 13.
Plaintiff designed the Original Work with Staller in mind.  Defs. CSMF ¶ 13; Pl.
RCSMF ¶ 13.  Plaintiff did not intend for anyone other than Diva Futura to use the
Original Work.  Pl. SMF ¶ 20; Defs. RSMF ¶ 20; Hayden Decl. ¶ 14.  If Diva Futura
had not purchased the Original Work, plaintiff did not have another potential
purchaser in mind.  Defs. CSMF ¶ 12; Pl. RCSMF ¶ 12.

Diva Futura purchased the Original Work for $900 cash.  Pl. SMF ¶ 20; Defs.
RSMF ¶ 20; Hayden Decl. ¶ 13.  No formal contract between plaintiff and Diva
Futura, Schicchi or Staller was drafted or signed in connection with the sale of the
Original Work.  Pl. SMF ¶ 20; Defs. RSMF ¶ 20; Hayden Decl. ¶ 14.

Plaintiff did not provide written or verbal permission for Diva Futura to
authorize third parties to use, reproduce or create derivatives of the Original Work.
Pl. SMF ¶ 20; Defs. RSMF ¶ 20; Hayden Decl. ¶ 14.

Plaintiff never saw the Original Work again after he sold it to Diva Futura in
1988 and he does not know of its present whereabouts.  Defs. CSMF ¶ 15; Pl.
RCSMF ¶ 15.  Nor has plaintiff had further contact with Staller or Schicchi since
the sale.  Pl. SMF ¶ 21; Defs. RSMF ¶ 21; Hayden Decl. ¶ 15.

### III.    The Koons Works

Koons is known widely as an "appropriation artist."  Pl. SMF ¶ 30; Defs. RSMF ¶ 30.  In 1989 and 1990, Koons hired Staller to be photographed with him in sexually explicit positions.  Pl. SMF ¶ 31; Defs. RSMF ¶ 31.  Koons traveled to Italy multiple times during this period.  Pl. SMF ¶ 31; Defs. RSMF ¶ 31.

In accordance with Koons' request, the photo sessions occurred on Staller's own sets at Schicchi's studio and incorporated a variety of theatrical backdrops, props and costumes that Staller had used previously in her other erotic performances.  Pl. SMF ¶ 31; Defs. RSMF ¶ 31.  Koons and Staller used the Original Work, or portions thereof, in the photo sessions.  Pl. SMF ¶ 32; Defs. RSMF ¶ 32.  The Original Work was depicted in certain photographs that Schicchi took and provided to Koons.  Pl. SMF ¶ 32; Defs. RSMF ¶ 32.

Koons later incorporated depictions of the Original Work, in whole or in part, in at least six different artworks that comprise part of the *Made in Heaven* series. Pl. SMF ¶ 33; Defs. RSMF ¶ 33.  Three of the six works are at issue here.  Pl. SMF ¶ 34; Defs. RSMF ¶ 34.  Those works are: the *Made in Heaven* billboard (1989), *Jeff and Ilona (Made in Heaven)* (1990) and *Jeff in the Position of Adam* (1990) (collectively, the "Koons Works").  Pl. SMF ¶ 34; Defs. RSMF ¶ 34.

### A.    *Made in Heaven* (1989)

*Made in Heaven* is a lithograph billboard created in 1989 that measures approximately 10 feet by 22.67 feet.  Pl. SMF ¶ 37; Defs. RSMF ¶ 37.  The *Made in*

*Heaven* billboard was created as an edition of three plus an artist's proof.  Pl. SMF ¶ 37; Defs. RSMF ¶ 37.

To create the *Made in Heaven* billboard, Koons took an original photograph taken by Schicchi and hired an outside printing company to make separations of the colors.  Pl. SMF ¶ 38; Defs. RSMF ¶ 38.  The company printed the colors onto large format paper which was then mounted to a billboard frame atop a building in lower Manhattan.  Pl. SMF ¶ 38; Defs. RSMF ¶ 38.

The first public display of the billboard was part of the *Image World* exhibition put on by the Whitney Museum of American Art in 1989.  Pl. SMF ¶ 39; Defs. RSMF ¶ 39.  After *Image World*, Koons had the *Made in Heaven* billboard image reprinted onto new paper and mounted on canvases for display in museums and available for sale to collectors.  Pl. SMF ¶ 39; Defs. RSMF ¶ 39.

*Made in Heaven* was exhibited in museums around Europe and the United States numerous times between 1989 and 2015.  Pl. SMF ¶ 40; Defs. RSMF ¶ 40.  Koons sold the three editions, two of which are owned privately and the other is owned by a museum.  Pl. SMF ¶ 40; Defs. RSMF ¶ 40.  Koons destroyed the artist's proof prior to the commencement of the instant action.  Pl. SMF ¶ 40; Defs. RSMF ¶ 40.

**B.    *Jeff and Ilona (Made in Heaven)* (1990)**

*Jeff and Ilona (Made in Heaven)* ("*Jeff and Ilona*") is a polychromed wood sculptural work created in 1990.[1]  Pl. SMF ¶ 41; Defs. RSMF ¶ 41.  It measures 5.5 feet by 9.5 feet by 5.4 feet.  Pl. SMF ¶ 41; Defs. RSMF ¶ 41.  Koons created *Jeff and Ilona* as an edition of one plus an artist's proof.  Pl. SMF ¶ 41; Defs. RSMF ¶ 41.  To create this work, Koons made drawings based on some of Schicchi's original photographs.  Pl. SMF ¶ 42; Defs. RSMF ¶ 42.  Koons then hired an outside company to render the drawings three-dimensionally into a clay model.  Pl. SMF ¶ 42; Defs. RSMF ¶ 42.  Next, an outside company reproduced the clay model in wood. Pl. SMF ¶ 42; Defs. RSMF ¶ 42.  Hired artisans then painted the wood sculpture with a variety of colors, such as gold, orange, green and turquoise.  Pl. SMF ¶ 42; Defs. RSMF ¶ 42.

*Jeff and Ilona* premiered at the 1990 Venice Biennale.  Pl. SMF ¶ 43; Defs. RSMF ¶ 43.  It has been exhibited several times since then.  Pl. SMF ¶ 43; Defs. RSMF ¶ 43.

---

[1] There is some dispute as to the definition of "polychromed."  Plaintiff states that "'[p]olychromed' wood simply means painted wood."  Pl. SMF ¶ 42.  Defendants dispute this definition and assert that "'polychromed' wood is painted in a variety of colors."  Defs. RSMF ¶ 42.

Merriam-Webster defines "polychrome" as "relating to, made with, or decorated in several colors."  *Polychrome*, Merriam-Webster Online Dictionary (last visited Feb. 5, 2025), https://www.merriam-webster.com/dictionary/polychrome; *see also Polychrome*, Cambridge Online Dictionary (last visited Feb. 5, 2025), https://dictionary.cambridge.org/us/dictionary/english/polychrome (defining "polychrome" as "having more than one color").

Koons sold the only edition of *Jeff and Ilona*. Pl. SMF ¶ 43; Defs. RSMF ¶ 43.

Museum Ludwig in Cologne, Germany owns it currently. Pl. SMF ¶ 43; Defs.

RSMF ¶ 43. Recently, an exhibition of *Jeff and Ilona* at the Ludwig Forum in

Aachen, Germany began in March 2020 and was ongoing at the time plaintiff

brought suit. Decl. of Jordan Fletcher Supp. Pl.'s Mot. Summ. J. ("Fletcher Decl."),

Ex. B at 5, ECF No. 58. Koons destroyed the artist's proof prior to the

commencement of the instant action. Pl. SMF ¶ 43; Defs. RSMF ¶ 43.

### C. *Jeff in the Position of Adam* (1990)

*Jeff in the Position of Adam* is a work of oil inks on canvas created in 1990

that measures 8 feet by 12 feet. Pl. SMF ¶ 44; Defs. RSMF ¶ 44. Koons created this

work as an edition of one plus an artist's proof. Pl. SMF ¶ 44; Defs. RSMF ¶ 44.

To create *Jeff in the Position of Adam*, Koons reproduced one of Schicchi's

photographs onto canvas using a printing process akin to an ink jet machine. Pl.

SMF ¶ 45; Defs. RSMF ¶ 45.

Koons sold the only edition of *Jeff in the Position of Adam* to a private

collector. Pl. SMF ¶ 46; Defs. RSMF ¶ 46. It was featured in an exhibition by the

Museo Jumex in Mexico City, which ran from May to September 2019. Pl. SMF ¶

46; Defs. RSMF ¶ 46. Koons destroyed the artist's proof prior to the commencement

of the instant action. Pl. SMF ¶ 46; Defs. RSMF ¶ 46.

## IV. Plaintiff's discovery of the Koons Works

Plaintiff did not become aware of the Koons Works until April 2019. Pl. SMF

¶ 56; Defs. RSMF ¶ 56; Hayden Decl. ¶ 17. Plaintiff's then-business partner, Sergio

Meschino, alerted plaintiff to a news article of April 30, 2019, published in the Italian publication *La Repubblica*. Pl. SMF ¶ 57; Defs. RSMF ¶ 57; Hayden Decl. ¶ 18; Decl. of Sergio Meschino ("Meschino Decl.") ¶¶ 7, 9, ECF No. 57. The article discussed a legal dispute between Staller and Sotheby's auction house and displayed an image of the *Made in Heaven* billboard. *See* Decl. of Daniel J. Brooks Supp. Defs.' Mot. Summ. J. ("Brooks Decl."), Ex. H, ECF No. 62; Pl. SMF ¶ 57; Defs. RSMF ¶ 57; Hayden Decl. ¶ 18; Meschino Decl. ¶ 7. Meschino states that he was not aware of the existence of the Koons Works prior to his discovery of the *La Repubblica* article in 2019. Pl. SMF ¶ 60; Defs. RSMF ¶ 60; Meschino Decl. ¶ 8.

On August 7, 2019, plaintiff filed an application for copyright registration of the Original Work with the U.S. Copyright Office. Pl. SMF ¶ 110; Defs. RSMF ¶ 110; Hayden Decl. ¶ 22. The title of the work in the application was *Il Serpente for Cicciolina*. Pl. SMF ¶ 110; Defs. RSMF ¶ 110. On January 10, 2020, the U.S. Copyright Office granted plaintiff's application and issued a Certificate of Registration with Registration Number VAu 1-380-397, effective August 7, 2019. Pl. SMF ¶ 111; Defs. RSMF ¶ 111; Hayden Decl., Ex. B. The registration does not identify a date of first publication or whether the Original Work was ever published. Pl. SMF ¶ 111; Defs. RSMF ¶ 111; Hayden Decl., Ex. B. Instead, it lists the "Year of Completion" as 1988. Hayden Decl., Ex. B.

In March 2020, plaintiff's counsel sent a letter to Koons' counsel that alleged infringing conduct, including violations of the Copyright Act, DMCA and VARA. *See* Fletcher Decl., Ex. F; Pl. SMF ¶ 61; Defs. RSMF ¶ 61.

## V.    Procedural History

On December 2, 2021, plaintiff filed a complaint against Koons for copyright infringement in the Southern District of New York.  Compl., ECF No. 1.

On December 9, 2021, the Court granted Koons' letter motion for an extension of time to file his answer.  Ct.'s Order Granting Letter Mot. Extension of Time, ECF No. 9.

On February 4, 2022, Koons filed a motion to dismiss the complaint and a memorandum of law in support.  Notice Mot. Dismiss Compl., ECF No. 23; Mem. Law Supp. Def.'s Mot. Dismiss Compl., ECF No. 25.

On March 24, 2022, plaintiff filed a memorandum of law in opposition to Koons' motion to dismiss.  Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss, ECF No. 27.

On March 31, 2022, Koons filed his reply memorandum of law.  Reply Mem. Law Supp. Def.'s Mot. Dismiss Compl., ECF No. 29.

On June 28, 2022, parties completed fact discovery.  Second Disc. Status Letter, ECF No. 35.

On July 18, 2022, the Court denied Koons' motion to dismiss the complaint and granted Koons' motion for a ruling limiting damages to the three-year period prior to the commencement of the action.  *See Hayden v. Koons* ("*Hayden I*"), No. 21 CIV. 10249 (LGS), 2022 WL 2819364, at *6 (S.D.N.Y. July 18, 2022), ECF No. 38.

On July 27, 2022, the Court granted plaintiff's letter motion to file an amended complaint and to add Jeff Koons LLC as a defendant in the action.  Ct.'s Order Granting Pl.'s Letter Mot. File Doc., ECF No. 43.

On July 28, 2022, plaintiff filed an amended complaint. Am. Compl. On August 11, 2022, defendants filed their answer to the amended complaint. Answer to First Am. Compl. ("Answer"), ECF No. 50.

On September 7, 2022, the Court granted plaintiff's letter motion for leave to file an enlarged Rule 56.1 Statement of up to 35 pages. Ct.'s Order Granting Pl.'s Letter Mot. Leave to File Excess Pages, ECF No. 52.

On September 15, 2022, plaintiff filed a motion for summary judgment and an accompanying memorandum of law in support. Pl. Notice Mot.; Pl. Br. Plaintiff also filed a Rule 56.1 statement. Pl. SMF. Finally, plaintiff filed a declaration in support of his motion. Fletcher Decl.

On October 5, 2022, defendants filed a cross-motion for summary judgment dismissing the complaint and a memorandum of law in opposition to plaintiff's motion. Defs. Notice Mot.; Defs. Br. Defendants also filed a response to plaintiff's Rule 56.1 statement and a counter-statement pursuant to Rule 56.1. Defs. RSMF; Defs. CSMF. Finally, defendants filed a declaration in support of their cross-motion. Brooks Decl. Attached to this declaration are excerpts from the transcript of the deposition of plaintiff. Brooks Decl., Exs. A-1, A-2, A-3, A-4 ("Hayden Tr.").

On October 19, 2022, plaintiff filed his reply memorandum of law and a response to defendants' Rule 56.1 counter-statement. Pl. Reply Br.; Pl. RCSMF. On October 24, 2022, defendants filed their reply memorandum of law. Defs. Reply Br.

On November 3, 2022, the case was reassigned to Judge Timothy M. Reif.  On

January 20, 2023, the Court ordered that an oral argument be held on March 15,

2023.  Order, ECF No. 69.

On January 26, 2023, the Court stayed the oral argument order of January

20, 2023, pending the U.S. Supreme Court's decision in *Andy Warhol Foundation*

*for the Visual Arts, Inc. v. Goldsmith* ("*Warhol*"), 598 U.S. 508 (2023).  Order, ECF

No. 70.  The Supreme Court issued the *Warhol* decision on May 18, 2023.  *See*

*Warhol*, 598 U.S. at 508.

On May 23, 2023, the Court ordered parties to submit supplemental briefing

in light of the decision of the Supreme Court in *Warhol*.  Order, ECF No. 71.  On

June 30, 2023, parties filed their supplemental memoranda of law.  Suppl. Mem.

Law Supp. Defs.' Cross-Mot. Summ. J. Dismissing Compl., ECF No. 74; Pl.'s Suppl.

Mem. Law Further Supp. Mot. Summ. J. and Opp'n to Defs.' Cross-Mot. Summ. J.

in Light of *Warhol*, ECF No. 75.

On June 12, 2024, plaintiff filed a letter motion requesting leave to move for

reconsideration of the scope of damages.  Pl. Letter Mot.

On June 13, 2024, defendants filed a letter response in opposition to

plaintiff's letter motion.  Letter Resp. Opp'n to Mot., ECF No. 78.

On June 17, 2024, plaintiff filed a letter reply to defendants' letter response.

Letter Reply to Resp. to Mot., ECF No. 79.

On January 23, 2025, the Court heard oral argument.  Oral Arg. Tr., ECF No.

87.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises subject matter jurisdiction over plaintiff's federal law claims pursuant to 17 U.S.C. §§ 501 and 1203, and 28 U.S.C. §§ 1331 and 1338.

FRCP 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

In evaluating a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citing *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993)). However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The nonmoving party is required to point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ.

P. 56(c)(1)(A).  "Conclusory allegations, conjecture, and speculation . . . are

insufficient to create a genuine issue of fact," and "[t]he mere existence of a scintilla

of evidence supporting the non-movant's case is also insufficient to defeat summary

judgment."  *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175

(2d Cir. 2003) (internal quotation marks omitted).

When, as here, both parties move for summary judgment, "each party's

motion must be examined on its own merits, and in each case all reasonable

inferences must be drawn against the party whose motion is under consideration."

*Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing

*Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)); *Heublein, Inc. v.*

*United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

## DISCUSSION

## I.    Statute of limitations

Defendants argue that plaintiff's "three Claims for Relief are barred by the

statute of limitations."  Answer at 9.

### A.    Legal framework

A plaintiff must bring a copyright infringement action "within three years

after the claim accrued."  17 U.S.C. § 507(b).  "Under the [Copyright] Act's three-

year provision, an infringement is actionable within three years, and only three

years, of its occurrence."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671

(2014). Moreover, "the infringer is insulated from liability for earlier infringements of the same work." *Id.*

Under the "discovery rule" used by the U.S. Court of Appeals for the Second Circuit (the "Second Circuit"), a copyright infringement claim does not "'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 50 (2d Cir. 2020); *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 151 (2d Cir. 2024). "The standard for whether a plaintiff should have discovered the relevant infringement is an objective one." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215 (VSB), 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018). Moreover, the Second Circuit has noted that the determination requires a "fact-intensive inquiry." *Michael Grecco Prods.*, 112 F.4th at 152.

Defendants bear the "burden to plead and prove a Copyright Act [statute of] limitations defense." *Id.* And a defendant "cannot rely on the passage of time alone" to establish that a plaintiff "should have discovered the alleged copyright infringements at issue." *Sohm*, 959 F.3d at 51.

## B.    Analysis

The court concludes that plaintiff's copyright infringement claim is time-barred.

Defendants do not dispute that plaintiff "did not become aware of Mr. Koons' creation of the [Koons Works] until April 2019." Pl. SMF ¶ 56; Defs. RSMF ¶ 56.

Defendants argue instead that plaintiff "was on inquiry notice and, in the exercise of due diligence, should have discovered the existence of these works decades ago." Defs. Br. at 32. Defendants explain that "Hayden was residing in Rome when the Koons [W]orks premiered in Venice in 1990, causing a 'media sensation and scandal' . . . and when, a few years later, another scandal erupted over the divorce and child custody battle being waged in an Italian court between Mr. Koons and Cicciolina." *Id.* (quoting Am. Compl. ¶ 10).

Plaintiff argues that "[d]efendants' statute of limitations affirmative defense fails because Hayden filed this lawsuit within three years of his discovery of the existence of the [Koons Works] in March 2019." Pl. Br. at 27. Plaintiff insists that "Hayden's lack of knowledge concerning the existence of the [Koons Works] prior to 2019 was not unreasonable under the circumstances." *Id.* (citing Pl. SMF ¶¶ 56-60).

Plaintiff asserts that defendants "cannot show that Hayden had any hint that Koons had copied the [Original] Work, was aware that Koons collaborated with Staller using her set pieces, or even knew who Koons was (aside from being Staller's ex-husband) prior to April 2019." Pl. Reply Br. at 13. Plaintiff argues that "[o]vercoming the discovery rule requires proof that Hayden had 'storm warnings' of Koons' infringement." *Id.* (quoting *Masi v. Moguldom Media Grp., LLC*, No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *5 (S.D.N.Y. July 22, 2019)).

The Supreme Court has stated that "terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating." *Merck*

& *Co. v. Reynolds*, 559 U.S. 633, 653 (2010).  However, "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."  *Id.*

A "reasonably diligent" person in plaintiff's position should have discovered the alleged infringement prior to 2019.

Plaintiff resided continuously in Italy from approximately 1987 until 2007.  *See* Hayden Tr. at 18; Meschino Decl. ¶ 3.  Plaintiff became fluent in Italian during his residency.  Hayden Tr. at 16, 29.  Plaintiff's residency in Italy overlapped with the premiere of *Jeff and Ilona* at the 1990 Venice Biennale.  Pl. RCSMF ¶ 30.  Plaintiff also watched Italian television news on occasion and read Italian daily newspapers.  *See* Hayden Tr. at 31-34.  Moreover, plaintiff lived with an Italian national who presumably would have consumed Italian news as well.  Meschino Decl. ¶ 3.

Plaintiff stated that "Ilona Staller is famous in Italy and she is a household name.  You can ask anyone who she is, and she is of interest, public interest."  Hayden Tr. at 112:5-8.  Plaintiff's former partner, Meschino, stated the same.  Meschino Decl. ¶ 8 (stating that "Cicciolina is a household name" in Italy).

It is reasonable to expect that someone who created sculptures and stage props specifically for a "household name" like Staller and who consumed Italian news would hear of her involvement in a major, international art exhibition such as the Venice Biennale.  And Staller's service as a member of the Italian parliament at

the time likely would have led to even wider news coverage.  *See* Pl. SMF ¶ 12; Defs.
RSMF ¶ 12.  The amended complaint itself asserts that "[t]he *Made in Heaven*
series caused a media sensation and scandal when it premiered."  Am. Compl. ¶
37.  The complaint does not state *where* such "sensation and scandal" occurred but
given that Staller at the time was famous in Italy, it can be inferred that the
premiere would have appeared prominently in Italian media.  *See id.*

Further, it is unlikely that a reasonably diligent person in plaintiff's position
would hear of Staller's involvement in the Biennale and then put it out of mind for
nearly 30 years without looking deeper.  This implausibility is especially true for
someone like plaintiff who is concerned about the infringement of their copyright, as
is demonstrated by his filing of the instant action.

Plaintiff concedes that he "read or watched a news story in or about 1994 that
mentioned Ms. Staller's involvement in a child custody lawsuit against a person
named 'Jeff Koons.'"  Pl. RCSMF ¶ 30; Hayden Tr. at 110:22-24, 112:9-13.  Despite
plaintiff's objections to the contrary, it is likely that such a story would at least
*mention* the *Made in Heaven* series of artworks, if not include pictures of some of
them, for the same reasons discussed above.  *See* Pl. Reply Br. at 13 ("Defendants
launch into wild speculation, asserting that '[t]he surrounding publicity [around the
custody battle] – *which inevitably must have mentioned the couple's then-recent
controversial artistic collaboration* – put Mr. Hayden on inquiry notice of Mr.
Koons's alleged copyright infringement of the Hayden Work.") (alterations in

original) (quoting Defs. Br. at 33). This fact would be enough to put a reasonably diligent plaintiff on notice of Koons' use of the Original Work in the Koons Works.

Plaintiff asserts that "prior to viewing the 2019 *La Repubblica* article, [plaintiff] was not aware that Koons was an artist or that he had engaged in any 'artistic collaboration' with Ms. Staller." Pl. RCSMF ¶ 30; Hayden Tr. at 164-66. However, in light of the foregoing, a reasonably diligent person in plaintiff's position should have at the very least learned that Koons was an artist well before 2019. Indeed, plaintiff's amended complaint describes Koons as "one of the most controversial living contemporary artists in the world." Am. Compl. ¶ 32.

Plaintiff cites to *Masi* to support his argument that "[o]vercoming the discovery rule requires proof that Hayden had 'storm warnings' of Koons' infringement." Pl. Reply Br. at 13 (quoting *Masi*, 2019 WL 3287819, at *5). Specifically, plaintiff notes that the *Masi* Court found that the claim was not time-barred where "[plaintiff] did not have knowledge of any infringement of his work and there was no reason for him to think [that], or duty for him to scour the internet to find out if, anyone was using his photographs without his consent." *Masi*, 2019 WL 3287819, at *5. However, the facts in *Masi* are importantly distinct from the facts here.

The plaintiff in *Masi* was a professional photojournalist who operated a "photo licensing business." *Id.* at *1. The *Masi* plaintiff licensed the original work, a series of photographs of a Norwegian prison, to various prominent media outlets for publication. *Id.* at *2. Interest in plaintiff's photographs surged due to an

unrelated news story in which a murderer was to be incarcerated in said prison. *Id.*
The *Masi* defendant displayed the photographs prominently on its website in an
article about the murderer without crediting plaintiff and without seeking
permission. *Id.* There was no communication between plaintiff and defendant at
any point prior to the dispute. *Id.* The Court determined that "[p]laintiff's
knowledge about general interest in the Halden Prison following a gruesome news
story is not sufficient to constitute constructive discovery that his photographs of
that prison were being infringed." *Id.* at *5.

In the instant case, plaintiff *did* have reason to think that someone, namely
Koons, was using the Original Work without his consent. As discussed above,
plaintiff was embedded in Italian culture when the *Made in Heaven* works
premiered and "caused a media sensation and scandal." Am. Compl. ¶¶ 10, 37. As
in *Masi*, there was no communication between Hayden and Koons at any point prior
to this dispute. However, the Koons Works involve Staller, who plaintiff worked
with previously and who would have been a prominent figure in the news for her
political activities and controversial public persona.

In addition, the infringement in *Masi* occurred only five years before
plaintiff's discovery of it, compared to nearly three decades here. *Id.* at *5 ("The
infringement occurred in 2011, and Plaintiff did not discover it until September 26,
2016."). As mentioned, defendants may not "rely on the passage of time alone" in
establishing that plaintiff "should have discovered the alleged copyright
infringements at issue in this case." *Sohm*, 959 F.3d at 51. However, this

limitation does not prevent the court from viewing the passage of time, especially a multi-decade delay, as probative of the timeliness inquiry.  *See id.*

It would be a different matter altogether if plaintiff did not reside in Italy during a 20-year period between 1988 and 2019 and had no reason to follow Staller's career.  *See* Hayden Tr. at 18.  Instead, plaintiff had numerous transactions with Staller, a household name in the country in which he resided for many years and of which he eventually became a citizen.  *See* Pl. SMF ¶ 15 ("Mr. Hayden created several sculptural works for Diva Futura which were used in connection with Ms. Staller's live erotic performances.  These included a series of cats, a lizard, a pyramid, a wall fresco, a starfish and seaweed, and a variety of boulders."); Defs. RSMF ¶ 15.  The court concludes that plaintiff "with due diligence should have discovered" Koons' infringement of the Original Work well before he read the 2019 *La Repubblica* article.  *Psihoyos*, 748 F.3d at 124.  Plaintiff's copyright infringement claim as to all three Koons Works is accordingly time-barred.

There are no material facts in genuine dispute that would impede the court's determination.  Parties reiterated as much at oral argument.  *See* Oral Arg. Tr. at 4:16-19 (plaintiff's counsel stating that "[w]ith respect to the question on the statute of limitations, the short answer . . . is no, there is no genuine dispute of material fact concerning whether Mr. Hayden was on inquiry notice about these works prior to 2019"); *id.* at 10:13-17 (defendants' counsel agreeing that "there's no disputed issue of material fact").

The court denies plaintiff's motion for summary judgment as to his copyright infringement claim.  Defendants' cross-motion for summary judgment dismissing the claim is granted.

## II.    Plaintiff's VARA claim

### A.    Legal framework

Congress enacted VARA in 1990 as an amendment to the Copyright Act "to provide for the protection of the so-called 'moral rights' of certain artists." *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003) (citation omitted).  "Moral rights, which are of relatively recent vintage in American jurisprudence, 'afford protection for the author's personal, non-economic interests in receiving attribution for her work, and in preserving the work in the form in which it was created, even after its sale or licensing.'" *Kerson v. Vermont Law School, Inc.*, 79 F.4th 257, 263 (2d Cir. 2023) (quoting *Pollara*, 344 F.3d at 269).

17 U.S.C. § 106A(a)(1)(A) provides that the author of a work of "visual art" shall have the right to "claim authorship of that work."  17 U.S.C. § 101 defines a "work of visual art" to include "a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author."

The protections of VARA apply to all covered works created on or after June 1, 1991.  Pub. L. No. 101-650, § 610(b)(2), 104 Stat. 5089 (1990); H.R. Rep. No. 101-514, at § 9(b)(1) (1990).  In addition, VARA applies to all covered works created before June 1, 1991, "but title to which has not, as of such effective date, been transferred from the author."  Pub. L. No. 101-650, § 610(b)(2), 104 Stat. 5089 (1990); *see Pavia v. 1120 Ave. of the Americas Assocs.*, 901 F. Supp. 620, 628 (S.D.N.Y. 1995) (concluding that a sculpture created in 1963 fell within the ambit of VARA because the author had not transferred title to the work); *accord Martin v. City of Indianapolis*, 982 F. Supp. 625, 638 (S.D. Ind. 1997) (concluding that a sculpture created in 1987 fell within the ambit of VARA because author "maintained title" to the sculpture "during those four years and beyond the 1991 effective date of VARA"), *aff'd*, 192 F.3d 608 (7th Cir. 1999).

## B.    Analysis

The court concludes that the protections of VARA do not apply to the Original Work.

It is undisputed that plaintiff created the Original Work in 1988, approximately three years before the VARA effective date.  Pl. SMF ¶ 17; Defs. RSMF ¶ 17; Hayden Decl. ¶ 11.

Plaintiff argues that the Original Work "is protected because Hayden never transferred title to any of his rights under copyright law."  Pl. Br. at 14.  Plaintiff explains that the word "title" in the statute does not apply "only to ownership of the physical object comprising an artwork."  *Id.*  Rather, plaintiff seems to read "title" to

include "fundamental copyrights." *See id.* (noting that the "word 'title' in §

106A(d)(2) immediately precede[s] language making the duration of VARA rights

coextensive with the duration of fundamental copyrights").

By contrast, defendants argue that "title" refers "to the physical copy of the

work of visual art at issue, and not to title to any intellectual property rights." Defs.

Br. at 30.

This Court has recognized previously that a previous draft of VARA used the

term "copyright" in place of "title." *See Hayden I*, 2022 WL 2819364, at *6.

However, the final version adopted the term "title" to avoid Takings Clause claims

under the Fifth Amendment of the U.S. Constitution. *See* 136 Cong. Rec. H13314

(1990), at 36948 (Rep. Kastenmeier noting that the "amendment in fact avoids

taking[s] clause arguments, and in this respect is salutary."); *see also* 5 Patry on

Copyright § 16:47 ("By focusing on the title to particular copies, VARA permits

retroactive application where a work created before the date of enactment may be

protected as embodied in some copies, but not others.").

In light of the foregoing and the fact that the statute does not define "title,"

*see* 17 U.S.C. § 101, the court will proceed with the understanding that "'title' refers

to title to the physical copy of the work of visual art at issue, and not to title to any

intellectual property rights." 5 Patry on Copyright § 16:47. Accordingly, VARA will

cover the Original Work only if plaintiff did not transfer title to the *physical copy* of

the Original Work before the effective date.

Undisputed facts demonstrate that plaintiff had in fact transferred title to the Original Work prior to the effective date.

Plaintiff sold the Original Work to Diva Futura in 1988 for $900 cash.  Defs. CSMF ¶ 9; Pl. RCSMF ¶ 9; Hayden Decl. ¶ 13.  No formal contract between plaintiff and Diva Futura, Schicchi or Staller was created or signed in connection with the Original Work that would have somehow reserved title over the physical object to plaintiff.  Pl. SMF ¶ 20; Defs. RSMF ¶ 20; Hayden Decl. ¶ 14.

Parties agree that plaintiff's sole objective in making the Original Work was for Staller to use it in her performances.  Pl. SMF ¶ 20; Defs. RSMF ¶ 20.  In other words, plaintiff's goal was to transfer title over the physical copy of the Original Work to Diva Futura specifically.  Moreover, after Diva Futura took possession, plaintiff never saw the Original Work again and does not know of its present whereabouts.  Defs. CSMF ¶ 15; Pl. RCSMF ¶ 15.

Because plaintiff transferred title to the physical copy of the Original Work to Diva Futura decisively and before the effective date, VARA does not cover the Original Work.

The court denies plaintiff's motion for summary judgment as to his VARA claim.  Defendants' cross-motion for summary judgment dismissing the VARA claim is granted.

## III.   Plaintiff's DMCA claim

The court concludes that plaintiff's DMCA claim is moot.

17 U.S.C. § 1202(a) provides that it is unlawful to "knowingly and with the intent to induce, enable, facilitate, or conceal infringement — (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false."

To establish a violation of section 1202(a), plaintiff must demonstrate "that defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 Fed. App'x 6, 9 (2d Cir. 2018).

Plaintiff's DMCA claim is moot given that the copyright infringement claim is time-barred. *See supra* Section I.B.  There was no actionable copyright infringement for defendants to "induce, enable, facilitate, or conceal."  17 U.S.C. § 1202(a); *Krechmer*, 747 Fed. App'x at 9.

Accordingly, plaintiff's motion for summary judgment as to the DMCA claim is denied.  Defendants' cross-motion for summary judgment dismissing the DMCA claim is granted.

## IV.    Reconsideration of the scope of damages

The court denies plaintiff's letter motion requesting permission to move for reconsideration of the scope of damages.  *See* Pl. Letter Mot.

Plaintiff's request for reconsideration is moot given that the copyright infringement claim is time-barred.  *See supra* Section I.B.

## CONCLUSION

For the reasons discussed, the court DENIES plaintiff's motion for summary judgment and GRANTS defendants' cross-motion for summary judgment dismissing the complaint.  The court also DENIES plaintiff's letter motion for leave to file a motion for reconsideration.

The Clerk of the Court is respectfully directed to terminate the open motions at ECF Nos. 53, 61 and 77.

SO ORDERED.


                                         /s/ Timothy M. Reif
Dated: February 25, 2025                 Timothy M. Reif, Judge
New York, New York                       United States Court of International Trade
                                         *Sitting by Designation*
                                         United States District Court for the
                                         Southern District of New York